UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LINETTE MARIN,
and similarly, situated individuals,

      Plaintiff,

      vs.

NCL (Bahamas) LTD., A BERMUDA COMPANY,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, LINETTE MARIN, (hereinafter "MARIN" or "Plaintiff"), sues Defendant, NCL (Bahamas) LTD., A BERMUDA COMPANY(hereinafter "NCL" or "Defendant") by and through the undersigned counsel, hereby files and serves the instant Complaint and states:

## NATURE OF CASE

10. MARIN, brings this action under Title VII of the Civil Rights Act of 1964 (Title VII) and the Florida Civil Rights Act (FCRA) for sex discrimination, including sexual orientation discrimination and retaliation.

11. All acts or omissions giving rise to this dispute took place in the Southern District of Florida.

## JURISDICTION AND VENUE

12.     This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e et seq. ("Title VII") and the Florida Civil Rights Act, Fla. Stat. § 760.10.

13.     This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e et seq.("Title VII").  This Court has supplementary jurisdiction for questions of state law.

14.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendant was located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. Plaintiff was employed by Defendant within Miami, Florida, which is located in Miami-Dade County, Florida.

## **PARTIES**

6.     At all material times, MARIN is an individual female who is a resident of the State of Florida and resides in Miami-Dade County.

7.     At all material times, Defendant NCL is a Foreign Profit Corporation duly authorized by the laws of the State of Florida with offices in Miami-Dade County, Florida.

8.     NCL is an employer as defined by all laws under which this action is brought and employs the requisite number of employees.

9.     At all material times, Defendant NCL employed MARIN.

10.     MARIN was an employee of NCL from in or about August 2016 through June 2020.

11.     NCL is a Bermuda corporation doing business in Miami-Dade County, Florida at all times relevant to this Complaint. Its principal place of business is in Miami.

12.     NCL was, during all times hereinafter mentioned, an "employer" within the meaning of Title VII and the FCRA.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

13.     On or about May 29, 2019, Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"). (Ex. A).

14.     An EEOC filing automatically operates as a dual FCHR filing, pursuant to Fla. Stat. § 760.11 and the workshare agreements between the agencies.

15.     On January 28, 2021, the EEOC issued a reasonable cause determination finding that MARIN had been subjected to unlawful discrimination. (Ex. B).

16.     On August 30, 2020, the EEOC issued Plaintiff a Right to Sue Letter.  MARIN received that letter after August 30, 2020. (Ex. C).

17.     This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

18.     This action is being commenced more than one hundred eighty (180) days since the inception of Plaintiff's admirative action against the Defendant.

19.     All conditions precedent to filing suit have been met or have been waived.

20.     All administrative prerequisites to filing suit have been met or have been waived.

## FACTUAL ALLEGATIONS

3

21.     NCL is in the cruise line industry.

22.     MARIN is a gay female.

23.     MARIN worked her way up from an entry level job in 2016 to the position of Supervisor of Reservations, which is the last position she held with NCL.

24.     At some point, MARIN was tasked with training new hires and other employees. She had a support staff of five individuals and trained approximately two dozen individuals at a time, twice a day.

25.     MARIN's background in education made her well-suited for her job duties as a trainer.  MARIN formulated a curriculum for her trainees and a manual as well.

26.     MARIN's job duties as a trainer was a favorable job assignment because she was able to achieve a regular 9-to-5 sort of schedule without having to work weekends.  This was a highly desirable schedule for someone in MARIN's position.

27.     In or about February 2019, another individual in MARIN's department, Leandro Echeverria, became a supervisor and was her counterpart for training employees.  Echeverria was not as qualified as MARIN as a trainer; nor did he display a skill set that made him well-suited for the job, as is evidenced by his constant requests for assistance from MARIN, the frequency of which interfered with her job duties.

28.     Leandro Echeverria insisted that MARIN drop everything whenever he had a question and to immediately deal with his questions and concerns, which were items that could have been addressed by Echeverria on his own had he consulted the materials that MARIN had prepared with regard to training.  Echeverria told MARIN that as the "right hand" person to Yvette Arias, their supervisor, he was obliged to give him his undivided attention.  Echeverria treated MARIN in a condescending manner. Echeverria acted as if MARIN was subordinate to him.

29.     MARIN complained to her supervisor, Yvette Arias, about Echeverria and another male employee, Pedro, verbally several times in or about April 2019.  Arias agreed that there was a problem with Echeverria's behavior and that she would address the problem.  However, it did not stop.

30.     On or about April 17, 2019, MARIN complained to Arias, via e-mail,  that Echeverria had subjected her to "harassment" because of his demeaning and condescending behavior towards her.

31.     NCL did not specifically ask MARIN the basis of her complaint of harassment or what motivated Echeverria in the way that he acted with MARIN.

32.     Rather than meet with MARIN and Echeverria separately, Arias met with MARIN and Echeverria about MARIN's complaint on April 17, 2019.  During the meeting, Echeverria was extremely critical of MARIN and Arias joined in on the criticism.  Both "ganged up" on MARIN.  MARIN was so upset at the reaction of Arias to her concerns that she secured coverage and left for the day.

33.     On April 19, 2019, MARIN met with the Senior Director of reservations, Andrew Moris, about the issue along with another manager, Mini Escobar.

34.     On April 25, 2019, Arias issued a Final Warning to MARIN claiming that she had been insubordinate during the April 17 and April 19, 2019 meetings and because she had left without securing coverage on April 17, 2019.  In fact, while MARIN had been upset at the meeting, even crying at times, she was never disruptive during the meeting; nor did she make comments that were deserving of a final warning.  Arias had been somewhat receptive to MARIN's complaints about Echeverria before MARIN formally complained of harassment.

35.     MARIN had never been disciplined before.

36.     NCL's issuance of a Final Warning was against NCL's own policies, practices and procedures which provided for progressive discipline in the normal course of business. MARIN should have been given a verbal counseling had NCL genuinely felt that her conduct, or their subjective version of her conduct, was inappropriate.

37.     MARIN knows of at least two other individuals outside of her protected group(s) who were extremely upset and insubordinate during meetings with management, some in her department, but were not given final warnings.  One employee yelled so loud that the employee's voice voice could be heard outside the room. Another chalked up a bout of insubordinate conduct to "being from Liberty City."

38.     NCL's issuance of a final warning prevented MARIN from applying to other jobs. MARIN applied for other jobs within NCL in or about May 2019, but found that she could not do so because of the Final Warning, which was to stay on her record for six months.

39.     NCL also took away MARIN's duties as trainer and instructed her staff at some point not to talk to MARIN.

40.     Moris pulled MARIN into a conference room, sometimes more than once in a day and admonished MARIN stating that Echeverria was not going anywhere.  MARIN told Moris that she did not expect for Echeverria to be fired but just wanted a normal working relationship with him.

41.     On May 1, 2019, MARIN complained to human resources about the situation and clearly stated Echeverria's demeaning attitude toward her was due to her sex and/or sexual orientation.

42.     MARIN met with Allie Wegel from human resources (HR) on May 1, 2019 and gave the HR person two specific examples of when employees had actually acted inappropriately during disciplinary or other meetings but were not given a final warning.

43.     On May 3, 2019, Echeverria posted a message for the management team (including MARIN) on NCL's internal posting board, stating "I'm getting all the Yvette love!! Jealous?"

44.     MARIN met with Wegel again on May 9, 2019.  Wegel told MARIN that she had spoken to Arias and that Arias had denied that the Final Warning was inappropriate. However, Wegel also said that Arias had learned that MARIN had secured coverage when she left on April 17, 2019 and that part should therefore be removed from the Final Warning.

45.     MARIN told Wegel that if she was allegedly insubordinate during the meeting that Echeverria should also have been disciplined because of his conduct.

46.     The Final Warning was never rescinded despite this new found information that MARIN had, in fact, secured coverage for her absence after the April 17, 2019 meeting.

47.     In or about May 2019, MARIN was turned down for a position as Analyst because of the Final Warning.  Additionally, the hiring manager wrote to MARIN that he would have to talk to Allie Wegel about her job application.

48.     MARIN stopped applying for other positions because it would have been futile to do so.

49.     On May 21, 2019, Arias met with MARIN and falsely accused her of performance issues.  Arias threatened MARIN with termination several times during the meeting stating that since she was on a Final Warning she could be terminated.  Arias also accused MARIN of alleged performance issues which MARIN can prove are false.

50.     At some point after that time, NCL allowed MARIN to work remotely.  This meant she lost her training duties and her highly desirable 9-to-5 schedule with no weekends.

51.     MARIN was forced to file a charge with the EEOC on May 29, 2019 due to NCL's inaction and unlawfully discriminatory treatment. (Ex. A).

52.     Despite the change to remote work, Arias constantly criticized MARIN's job performance either directly or through other supervisors who were aligned with Arias.

53.     Arias' criticisms of MARIN continued even after the charge was filed.  For instance, after the charge was filed, Arias criticized MARIN for not responding to her quickly on a Sunday with regard to an innocuous matter.  In fact, MARIN had replied in a timely fashion.

54.     At some point after the charge filing, NCL formed an intention to seek MARIN's separation from NCL because of her complaints.  MARIN learned this through an e-mail that had been sent to her accidentally.

55.     MARIN sought the advice of a therapist for the first time in her life because of NCL's conduct towards her.  NCL terminated her employ after NCL refused to change the situation in order for MARIN to come back from leave.


**COUNT I**
**VIOLATION OF TITLE VII**

56.     NCL was motivated in its unequal treatment of MARIN because of her sex and/or sexual orientation (nonconformity to traditional gender stereotypes) in violation of Sections of Title VII, 42 U.S.C. §§ 2000e-2(a).

57.     NCL subjected MARIN to adverse actions when: (1) she was given a final warning; (2) the final warning was not rescinded after her manager learned that she had obtained coverage after the April 17, 2019 meeting; and (3) her job duties and schedule as a trainer were taken away.

MARIN  was subjected to disparate treatment with regard to all of these adverse actions.  Others, including Echeverria and/or other individuals who were insubordinate during meetings were not given Final Warnings and did not have their job duties taken away as a result.

58.     NCL's actions were intentional or were taken with reckless disregard of MARIN's rights under Title VII.

WHEREFORE, MARIN asks this Court to grant the following relief:

    a.    Issue a declaratory judgment finding that: NCL's conduct toward MARIN violated Title VII;

    b.    Enjoin and restrain NCL and all other persons acting on behalf of, or in concert with them, from engaging in such unlawful practices;

    c.    Enter judgment in favor of MARIN and against NCL for backpay in the amount of wages and fringe benefits it is determined that MARIN has lost as a result of NCL's unlawful conduct, together with prejudgment interest from the date of the violations

    d.    Enter judgment in favor of MARIN and against NCL for pecuniary and non-pecuniary compensatory damages together with prejudgment interest pursuant to 42 U.S.C. § 1981a;

    e.    Award MARIN punitive damages pursuant to 42 U.S.C. § 1981a;

    f.    Award MARIN a reasonable attorney's fee, pursuant to 42 U.S.C. § 1981a together with costs of this action; and

    g.    Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of Plaintiff MARIN's rights, to

prevent reoccurrence of similar acts in the future and to protect Defendant's

other employees from such unlawful behavior.

## COUNT II
## VIOLATION OF TITLE VII (Retaliation)

59.     MARIN re-alleges paragraphs 1 through 55 as if fully set forth herein.

60.     NCL was motivated in its unequal treatment of MARIN because of her complaints

or opposition to unlawful discrimination, including her charge filing, in violation of Sections of

Title VII, 42 U.S.C. §§ 2000e-3.

61.     NCL subjected MARIN to adverse actions when: (1) the final warning was not

rescinded after her manager learned that she had obtained coverage after the April 17, 2019

meeting;  (2) NCL did not return her to her job duties as a trainer with the same schedule; (3) she

was not allowed to apply for another job internally; (3) she was subjected to constant criticism

after her May 1, 2019 complaint and charge filing; (4) NCL rejected her application for internal

position(s) or took actions that made her application for such futile; and  (5) she was terminated.

62.     NCL's actions were intentional or were taken with reckless disregard of MARIN's

rights under Title VII.

WHEREFORE, MARIN asks this Court to grant the following relief:

a.      Issue a declaratory judgment finding that: NCL's conduct toward MARIN violated

        Title VII;

b.      Enjoin and restrain NCL and all other persons acting on behalf of, or in concert

        with them, from engaging in such unlawful practices;

c.      Enter judgment in favor of MARIN and against NCL for backpay in the amount of wages and fringe benefits it is determined that MARIN has lost as a result of NCL's unlawful conduct, together with prejudgment interest from the date of the violations

d.      Enter judgment in favor of MARIN and against NCL for pecuniary and non-pecuniary compensatory damages together with prejudgment interest pursuant to 42 U.S.C. § 1981a;

e.      Award MARIN punitive damages pursuant to 42 U.S.C. § 1981a;

f.      Award MARIN a reasonable attorney's fee, pursuant to 42 U.S.C. § 1981a together with costs of this action; and

g.      Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of Plaintiff MARIN's rights, to prevent reoccurrence of similar acts in the future and to protect Defendant's other employees from such unlawful behavior.

## COUNT III
## VIOLATION OF TITLE FCRA

63.      Marin re-alleges paragraphs 1 through 55 as if fully set forth herein,

64.      NCL was motivated in its unequal treatment of MARIN because of her sex and/or sexual orientation (nonconformity to traditional gender stereotypes) in violation of the Florida Civil Rights Act (FCRA), Fla. Stat. § 760.10(1)(a).

65.      NCL subjected MARIN to adverse actions when: (1) she was given a final warning; (2) the final warning was not rescinded after her manager learned that she had obtained coverage after the April 17, 2019 meeting; and (3) her job duties and schedule as a trainer were taken away.

MARIN  was subjected to disparate treatment with regard to all of these adverse actions.  Others, including Echeverria and/or other individuals who were insubordinate during meetings were not given Final Warnings and did not have their job duties taken away as a result.

66.     NCL's actions were intentional or were taken with reckless disregard of MARIN's rights under the FCRA.

WHEREFORE, MARIN asks this Court to grant the following relief:

a.   Issue a declaratory judgment finding that: NCL's conduct toward MARIN violated the FCRA;

b.    Enjoin and restrain NCL and all other persons acting on behalf of, or in concert with them, from engaging in such unlawful practices;

c.    Enter judgment in favor of MARIN and against NCL for backpay and front pay  in the amount of wages and fringe benefits it is determined that MARIN has lost as a result of NCL's unlawful conduct, together with prejudgment interest from the date of the violations

d.    Enter judgment in favor of MARIN and against NCL for pecuniary and non-pecuniary  compensatory  damages  together  with  prejudgment  interest pursuant to the FCRA, Fla. Stat. § 760.11.

e.    Award  MARIN  punitive  damages  pursuant  to  the  FCRA,  Fla.  Stat.  § 760.11.

f.    Award MARIN a reasonable attorney's fee, pursuant to the FCRA, Fla. Stat. § 760.11, together with costs of this action; and

g.    Award  such  other  and  further  legal  and  equitable  relief  as  may  be appropriate to redress fully the deprivation of Plaintiff MARIN's rights, to

12

prevent reoccurrence of similar acts in the future and to protect Defendant's

other employees from such unlawful behavior.

## COUNT IV
## VIOLATION OF FCRA (Retaliation)

67.     MARIN re-alleges paragraphs 1 through 55 as if fully set forth herein.

68.     NCL was motivated in its unequal treatment of MARIN because of her complaints

or opposition to unlawful discrimination, including her charge filing, in violation of the FCRA,

Fla. Stat. § 760.10(7).

69.     NCL subjected MARIN to adverse actions when: (1) the final warning was not

rescinded after her manager learned that she had obtained coverage after the April 17, 2019

meeting;  (2) NCL did not return her to her job duties as a trainer with the same schedule; (3) she

was not allowed to apply for another job internally; (3) she was subjected to constant criticism

after her May 1, 2019 complaint and charge filing; (4) NCL rejected her application for internal

position(s) or took actions that made her application for such futile; and (5) she was terminated.

70.     NCL's actions were intentional or were taken with reckless disregard of MARIN's

rights under the FCRA.

WHEREFORE, MARIN asks this Court to grant the following relief:

a.   Issue a declaratory judgment finding that: NCL's conduct toward MARIN violated

the FCRA, Fla. Stat. § 760.10(7);

b.   Enjoin and restrain NCL and all other persons acting on behalf of, or in concert

with them, from engaging in such unlawful practices;

c.      Enter judgment in favor of MARIN and against NCL for backpay in the amount of wages and fringe benefits it is determined that MARIN has lost as a result of NCL's unlawful conduct, together with prejudgment interest from the date of the violations

d.      Enter judgment in favor of MARIN and against NCL for pecuniary and non-pecuniary compensatory damages together with prejudgment interest pursuant to the FCRA, Fla. Stat. § 760.11,

e.      Award MARIN punitive damages pursuant to the FCRA, Fla. Stat. § 760.11,

f.      Award MARIN a reasonable attorney's fee, pursuant to the FCRA, Fla. Stat. § 760.11,together with costs of this action; and

g.      Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of Plaintiff MARIN's rights, to prevent reoccurrence of similar acts in the future and to protect Defendant's other employees from such unlawful behavior.

## **JURY DEMAND**

MARIN demands trial by jury on all issues so triable.


Respectfully submitted,

GARY A. COSTALES, P.A.
1533 Sunset Drive, Suite 150
Miami, Florida 33131
(786) 446-7288 Ext. 1001
(786) 446-7298
(786) 323-7274 (facsimile)

/s Gary A. Costales
Gary A. Costales, Esq.
Florida Bar No. 0948829